IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

ASHLEY LYNDOL JONES, )
)
Petitioner, )
)
v. ) CASE NO. CV502-116
)
BRUCE CHATMAN, Warden Georgia )
Diagnostic and Classification )
Center, )
)
Respondent. )
)

## ORDER

Before the Court is Petitioner's Renewed Motion for an Evidentiary Hearing. (Doc. 88.) For the following reasons, Petitioner's motion is **DENIED**. As a result, Respondent's Motion Requesting Ruling on Petitioner's Motion for Evidentiary Hearing (Doc. 93) is **DISMISSED AS MOOT**. Respondent's Motion for Leave to File Excess Pages (Doc. 106) is **GRANTED**.

### BACKGROUND

I. <u>FACTUAL HISTORY</u>

The facts of this case were set forth by the Supreme Court of Georgia.

> Jones and his co-defendant, Allen Bunner, began the crime spree which led to the death of Keith Holland on the night before the murder, when they stole four cases of beer from a convenience store in Ware County. The co-defendants fled in an automobile with three other companions, who were

waiting for them outside the store. The group spent the remainder of the night driving around aimlessly and drinking the stolen beer, until their car broke down, and Jones and Bunner left the others, stating they were going to find a truck.

The co-defendants stole a Ford truck, belonging to Rudolph Melton, which was parked in front of Melton's residence. After driving around for several more hours in the stolen truck, they arrived at the home of the victim, Keith Holland. Bunner knocked on Holland's front door at approximately 5 a.m. and asked Holland's wife Mamie for assistance, on the pretext that the truck's battery was dead. Mamie Holland woke her husband, and he went outside to assist Bunner. As Holland was leaning over to look in the engine compartment of the truck, Jones struck him in the head from behind with a sledge hammer.

Mamie Holland witnessed the first blow from her dining room window and reacted by screaming for Jones to stop and by banging on the window. Jones turned and looked at her but continued to pound the victim, inflicting at least six blows to the head and face, all of which were potentially fatal. Prior to leaving in the victim's truck, Jones got out of the vehicle and hit the victim again, while he was lying on the ground. EMS workers arrived within minutes after the co-defendants' departure. Because of the injuries to the victim's face, EMS workers were unable to perform CPR or intubate the victim, and he died before reaching the hospital.

Jones and Bunner drove to Florida in the victim's truck. They tossed Holland's personal belongings out of the truck along the way, and pawned two chain saws belonging to Melton. Police learned of their whereabouts through telephone calls made by the co-defendants to a friend in Georgia, and they were arrested at a welcome station south of the Georgia-Florida line. The victim's truck, which Jones and Bunner had burned, was found in the woods a short distance away.

Jones v. State, 267 Ga. 592, 592-93, 481 S.E.2d, 823-24 (1997).

II. PROCEDURAL HISTORY

Petitioner was arrested on the afternoon of March 31, 1993. Seven days later, he was indicted in the Superior Court of Ware County, Georgia for malice murder, felony murder, armed robbery, interference with government property, and theft by taking. (Doc. 96, Attach. 1 at 14.) He pled not guilty. (Doc. 96, Attach. 2 at 133.) His jury trial began on June 8, 1995.[1] (Doc. 24 at 13.) On June 10, 1995, he was convicted of all charges. (Doc. 96, Attach. 2 at 133.) Four days later, he was sentenced to death. (Doc. 24 at 13.)

After a hearing, the trial court denied Petitioner's motion for a new trial. (Doc. 98, Attach. 8 at 29.) On March 10, 1997, the Georgia Supreme Court affirmed his convictions and sentences. Jones v. State, 267 Ga. 592, 481 S.E.2d 821 (1997). A petition for writ of certiorari to the United States Supreme Court was denied on November 3, 1997. Jones v. Georgia, 522 U.S. 953 (1997).

---

[1] Allen Bunner was arrested with Petitioner and charged as a co-defendant. He was tried separately and received a sentence of life without parole. He did not appeal his conviction.

3

On February 5, 1998, the trial court signed an execution warrant and scheduled Petitioner's execution for the time period between February 24 and March 3, 1998. (Doc. 99, Attach. 6 at 7.) In response to the death warrant, Petitioner filed a state habeas corpus petition in the Superior Court of Butts County. (Id.) The state habeas court conducted an evidentiary hearing on March 15, 1999 (Doc. 100, Attachs. 1-4; Doc. 101, Attachs. 1-5; Doc. 102, Attachs. 1-3), and ultimately denied the petition, as amended, on January 7, 2000 (Doc. 103, Attach. 1). Further attempts to appeal were unavailing.

After filing a 28 U.S.C. § 2254 petition in this Court (Doc. 5), Petitioner filed a Motion for Discovery seeking the opportunity to depose his trial and sentencing jurors (Doc. 31). The Court addressed Petitioner's request and ultimately denied his motion, concluding that many of his claims were procedurally defaulted. (Doc. 37.) Petitioner subsequently filed a Motion for an Evidentiary Hearing requesting an evidentiary hearing on similar claims to those for which he had requested discovery. (Doc. 50.) The Court dismissed that motion and ordered Petitioner to resubmit his request. (Doc. 54.) The Court denied Petitioner's second motion for an evidentiary hearing (Doc. 58) and ordered the parties to file supplemental

briefs addressing Petitioner's request for an evidentiary hearing in light of the United States Supreme Court's decision in <u>Cullen v. Pinholster</u>, 563 U.S. 170 (2011). (Doc. 79.) The parties filed the requested briefs and Petitioner filed a renewed motion for an evidentiary hearing. (Doc. 88.) Thereafter, the Court requested additional supplemental briefing on the issue of procedural default and exhaustion. (Doc. 94.) The parties have complied with the Court's directives and Petitioner's motion is now ripe for review. (Doc. 88.)

In Petitioner's Renewed Motion for an Evidentiary Hearing (Doc. 88), he requests that the Court permit an evidentiary hearing on his claims based on juror misconduct, the seating of incompetent jurors, improper trial court rulings related to the dismissal of two jurors, the denial of his right to be present at a critical stage, and ineffective assistance of counsel. (Doc. 88.) Respondent argues that Petitioner is not entitled to an evidentiary hearing because his claims are either unexhausted and thus should be found procedurally defaulted, or were found to be procedurally defaulted by the state courts. (Doc. 107.) Respondent also alleges that <u>Pinholster</u>, 563 U.S. 170, precludes an evidentiary hearing

on Petitioner's claims that were previously decided on the merits in the state courts. (Id.)

**ANALYSIS**

I. <u>STANDARDS GOVERNING EVIDENTIARY HEARINGS IN FEDERAL HABEAS CORPUS CASES</u>

The Antiterrorism and Effective Death Penalty Act ("AEDPA") limits the availability of evidentiary hearings in federal habeas cases. The statute states that

> [i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). However, petitioners who have shown diligence in pursuing their claims are not precluded from receiving an evidentiary hearing. <u>See</u> <u>Pope v. Sec'y for</u>

6

Dept. of Corr., 680 F.3d 1271, 1291 (11th Cir. 2012). In this situation, "once a petitioner has established diligence, a federal court may grant an evidentiary hearing without regard to the strictures of 28 U.S.C. § 2254(e)(2), but only if the petitioner has 'proffer[ed] evidence that, if true, would entitle him to relief.'" Pope, 680 F.3d at 1291 (quoting Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) (alteration in original)); accord Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."). Accordingly, a "petitioner is not entitled to an evidentiary hearing when his claims are merely 'conclusory allegations unsupported by specifics.'" Boyd v. Allen, 592 F.3d 1274, 1305 (11th Cir. 2010) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

However, even diligent petitioners are not entitled to an evidentiary hearing in all cases. First, the Court is not required to hold an evidentiary hearing when a petitioner seeks review of a procedurally defaulted claim. See Henry v. Warden, Ga. Diagnostic Prison, 750 F.3d 1226, 1232 (11th Cir. 2014) (finding no entitlement to

evidentiary hearing when claim is procedurally defaulted.) Generally, a petitioner can overcome procedural default only by showing "both cause for the failure to raise the claims on direct appeal and actual prejudice, or demonstrate[] that a 'failure to consider the claims will result in a fundamental miscarriage of justice.'" Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179-80 (11th Cir. 2010) (citing Muhammad v. Sec'y, Dep't of Corr., 554 F.3d 949, 957 (11th Cir. 2009)). Second, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." Pinholster, 563 U.S. at 185. As a result, if Petitioner's claims were litigated on the merits by the state court and that litigation did not

    (1)    result[] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]

no evidentiary hearing is appropriate. 28 U.S.C. § 2254(d); accord Schriro, 550 U.S. at 474; see also Landers v. Warden, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a

habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

II. PETITIONER'S MOTION FOR EVIDENTIARY HEARING

This Court has previously concluded that Petitioner was diligent in seeking the discovery he requests. (Doc. 37 at 9.) Specifically, the Court noted that Petitioner requested the deposition of the capital trial jurors, but was precluded from accessing this information by the state habeas court. (Id.) Accordingly, the Court must determine whether any of Petitioner's claims are either procedurally defaulted or subject to Pinholster's restrictions, and whether Petitioner has "proffer[ed] evidence that, if true, would entitle him to relief." Pope, 680 F.3d at 1291 (quoting Hill v. Moore, 175 F.3d 915, 92 (11th Cir. 1999) (alteration in original)).

A. Jury Excusal and Jury Instructions

1. *Jury Excusal*

Petitioner requests an evidentiary hearing to probe the reasons for the excusal of two jurors: Angela Wooten Blevins and Martha Douglas. (Doc. 58 at 2; Doc. 88 at 11.)

Juror Blevins was removed after the jury found Petitioner guilty, but before the jury began deliberations as to the appropriate sentence. Juror Douglas was removed after the jury had begun sentencing deliberations. Juror Blevins was removed pursuant to a doctor's note and Juror Douglas was likewise removed for medical reasons. Petitioner's counsel did not raise any objection at trial or on direct appeal to the removal of these jurors.

This Court previously concluded that Petitioner was not entitled to discovery on the jury excusal claims. (Doc. 37 at 10.) Because Petitioner failed to raise these jury excusal claims at the trial court level and while on direct review, the claim was procedurally defaulted. (Id. at 14.) To determine whether discovery was warranted, this Court evaluated whether Petitioner's trial counsel was ineffective and whether this ineffectiveness resulted in cause and prejudice sufficient to excuse Petitioner's default. (Id. at 14-15); see Spencer, 609 F.3d at 1179-80 (citing Muhammad, 554 F.3d at 957).

This Court concluded that Petitioner could not make such a showing. (Doc. 37 at 10.) Petitioner failed to inquire at his state habeas hearing why his trial counsel did not object to the removal of the two jurors. (Id. at 15-18.) In fact, evidence of trial counsel's reasons for

not challenging the excusals was never provided to the Court even though Petitioner's trial counsel testified at the state habeas hearing.[2] (See, e.g., Doc. 100, Attach. 1 at 38-172.) As a result, this Court held that Petitioner's juror excusal claim was procedurally defaulted and could not support a grant of discovery. (Doc. 37 at 18.)

The Court likewise concludes that an evidentiary hearing on this claim is unwarranted. First, the Court agrees with its previous assessment that Petitioner has pointed to absolutely no evidence suggesting that his counsel was ineffective. (Id. at 17.) The Court will not "assume[] that counsel was ineffective where the record [is] silent." Burt v. Titlow, ___ U.S. ___, 134 S. Ct. 10, 13 (2013). Accordingly, there is no reason to grant an evidentiary hearing on this claim because it is procedurally defaulted and cannot be excused by ineffective assistance of counsel.

Second, the Court is barred from considering new evidence on the issue of trial counsel's ineffectiveness in

---

[2] Petitioner's counsel gave testimony addressing numerous aspects of his representation, including whether he interviewed witnesses; how much time he spent in preparation; whether he considered challenges to the jury pursuant to Batson v. Kentucky, 476 U.S. 79 (1986); whether he considered allowing Petitioner's father to testify; and whether he considered introducing evidence of Petitioner's drug and alcohol use. (Doc. 100, Attach. 1 at 38-172.)

11

this circumstance. The Georgia Supreme Court denied (Doc. 103, Attach. 7) Petitioner's Application for Certificate of Probable Cause to Appeal ("CPC") (Doc. 103, Attach. 3 at 65), which raised the argument that Petitioner's attorney was ineffective for failing to challenge the juror excusals. The denial of this claim "was, implicitly, a determination that none of petitioner's claims had arguable merit." Jones v. GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (quoting Newland v. Hall, 527 F.3d 1162, 1199 (11th Cir. 2008) (internal quotations omitted)). As discussed above, the Supreme Court has determined that where a state court has adjudicated a petitioner's claim on the merits, review of whether that claim involved either a "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d), is limited to the record in the state court. Pinholster, 563 U.S. at 185; see also Landers, 776 F.3d at 1295 ("Pinholster's holding governs only claims brought under § 2254(d)(1), but its logic applies even more clearly to § 2254(d)(2)."). As a result, in order to receive an evidentiary hearing on his claim of

ineffective assistance of counsel in the jury excusal context, Petitioner must meet the requirements of 28 U.S.C. § 2254(d) based on the record in the state court. Landers, 776 F.3d at 1295. The record in the state court below does not support a finding that Petitioner's counsel was ineffective in failing to challenge the excusal of the two jurors or that the state court made an unreasonable determination of either fact or law in making this determination. Accordingly, an evidentiary hearing is not warranted with respect to this claim.

2. *Juror Instructions*

Petitioner also requests an evidentiary hearing to determine whether the trial court properly instructed the jury after one juror was replaced with an alternate. (Doc. 58 at 36; Doc. 88 at 3.) The state habeas court concluded that this claim was procedurally defaulted. (Doc. 103, Attach. 1 at 4.) This Court previously determined that Petitioner was not entitled to discovery on this claim because he had not shown sufficient cause and prejudice to overcome this default. (Doc. 37 at 19.) Like Petitioner's jury excusal claim, Petitioner failed to inquire of his counsel at the state habeas hearing why counsel had not objected to the jury instruction. Because Petitioner's claim is procedurally defaulted, and for the

same reasons discussed above, Petitioner is not entitled to an evidentiary hearing on this claim.

### 3. *Presence During Excusals*

Petitioner also requests an evidentiary hearing on whether he was denied his constitutional right to be present at the time the trial court excused two jurors. (Doc. 58 at 2; Doc. 88 at 2.) This Court previously determined that this claim was procedurally defaulted. (Doc. 37 at 17.) Moreover, the Court concluded that Petitioner could not overcome this default by showing that his attorney was ineffective in failing to ensure Petitioner was present at the time the trial court excused the jurors. (Id. at 18.) The Court noted that Petitioner had once again failed to ask his trial counsel at the state habeas hearing why he did not object to Petitioner's absence when the jurors were excused. (Id. at 17.)

This analysis is not altered simply because Petitioner is requesting an evidentiary hearing. See Henry, 750 F.3d 1226, 1232 (11th Cir. 2014) (no entitlement to evidentiary hearing when claim is procedurally defaulted). Moreover, Petitioner has not provided any new evidence upon which this Court could reevaluate this decision. Because Petitioner's claim is procedurally defaulted, and for the

same reasons as discussed above, he is not entitled to an evidentiary hearing.

B. Split Vote

Petitioner also requests an evidentiary hearing to determine whether the trial court's inquiry into the jury split was appropriate. This Court previously addressed whether Petitioner could depose the jurors to determine whether the trial court's inquiry as to how the jury was split in their vote negatively impacted their decision. (Doc. 37 at 23.) The state habeas court found that Petitioner had procedurally defaulted this claim (Doc. 103, Attach. 1 at 5) and Petitioner did not raise this claim in his application for a CPC to the Georgia Supreme Court. Upon review, this Court concluded that Petitioner's claim was procedurally defaulted and that Petitioner had not shown that his counsel's failure to object constituted ineffective assistance sufficient to overcome default. (Doc. 37 at 26-27.) Specifically, this Court noted that "[t]here is some authority for the view that it is not error for a trial judge to inquire into the numerical division of the jurors during deliberations." (Id. at 26.) As a result, this Court was unable to conclude that Petitioner's trial counsel was unreasonable when he failed to object to the trial judge's inquiry. (Id.) This Court

denied Petitioner's request for discovery on this claim. (Id.)

The Court agrees with its previous assessment that Petitioner has not shown his counsel's failure to object constituted ineffective assistance excusing his procedural default on this claim. Furthermore, Petitioner has not pointed to any additional evidence supporting the claim that his trial counsel was ineffective in this matter. Accordingly, Petitioner is not entitled to an evidentiary hearing on this claim. See Henry, 750 F.3d at 1232 (upholding denial of evidentiary hearing where petitioner "failed to proffer any new evidence about cause and prejudice in the district court, and the record established that the state court had already allowed him to present evidence").

C. Juror Misconduct

Petitioner also requests an evidentiary hearing to determine whether jurors were drinking alcohol with a bailiff, and whether jurors kept and referenced a bible during deliberations. (Doc. 88 at 12.) This Court previously concluded that while Petitioner had not procedurally defaulted his claims of juror misconduct, he had not shown good cause to justify discovery. (Doc. 37 at 20.) Specifically, the Court noted that "[t]he only

documented suggestion of the alleged misconduct is the unsworn account of counsel's conversation with juror Blevins, during which Ms. Blevins suggested that some jurors drank beer with deputies at night and that one juror had a Bible during the trial." (Id. at 20-21.)

Petitioner is not entitled to an evidentiary hearing on his allegations of juror misconduct. First, the Court is not required to hold an evidentiary hearing based on unsupported allegations. See Sierra v. Fla. Dep't of Corr., 657 F. App'x 849, 852 n.1 (11th Cir. 2016) (denying evidentiary hearing because petitioner "h[ad] not sufficiently alleged facts that, if true, would entitle him to relief" (citing Schriro, 550 U.S. at 474)). Petitioner's allegations here are based on an unsupported and unsworn account.

Second, even if Petitioner's unsupported allegations are true, they are not enough to justify an evidentiary hearing. The allegation that a juror had a drink with a deputy is not direct evidence of juror misconduct because it lacks any suggestion that the juror received information to which he should not have had access. See Boyd, 592 F.3d at 1305-07 (upholding denial of evidentiary hearing for juror misconduct when there was merely a "wholly speculative suggestion" that an alternate juror "may have

seen more or shared more or talked to other jurors"). Moreover, the presence of a bible is not per se evidence of juror misconduct. See McNair v. Campbell, 416 F.3d 1291, 1309 (11th Cir. 2005) (finding that the reading of certain passages from the bible along with prayer "did not distract the jury from basing its verdict on the evidence presented"). To receive an evidentiary hearing, Petitioner is obligated to provide more evidence than unsworn allegations that a bible was present or that jurors imbibed alcohol.[3] Because Petitioner has failed to do so here, he is not entitled to a hearing on the question of juror misconduct.

D. Juror Mental Health

Petitioner also requests an evidentiary hearing to determine whether Roosevelt Gowdy was fit to serve on the jury. (Doc. 58 at 26; Doc. 88 at 9.) Petitioner believes

---

[3] Petitioner cites to Wellons v. Hall, 558 U.S. 220 (2010), to argue that the speculative nature of his juror misconduct claims should entitle him to relief because his allegations "have not been refuted and the implications of misconduct submitted by Petitioner warrant inquiry." (Doc. 110 at 24.) However, Wellons addressed the denial of an evidentiary hearing where the district court barred discovery based on procedural default and where the Court of Appeals "gave this question, at most, perfunctory consideration that may well have turned on the District Court's finding of a procedural bar." 558 U.S. at 222. In this case, the Court does not conclude that Petitioner's claim was procedurally barred. Instead, the Court concludes that Petitioner has insufficiently alleged facts that, if true, would entitle him to relief.

that Juror Gowdy's odd behavior several years after Petitioner was convicted and sentenced indicates that Juror Gowdy was mental unstable at the time of Petitioner's trial. This Court previously concluded that, while the proffered evidence of Juror Gowdy's behavior was indeed bizarre, it was "only evidence of Gowdy's mental state three years and two months after Petitioner's trial." (Doc. 37 at 23.) Accordingly, the Court denied Petitioner's request for discovery on the basis that allowing it would result in an unwarranted fishing expedition. (Id.)

The Court concludes that Petitioner is not entitled to an evidentiary hearing on Juror Gowdy's competence. Petitioner has provided no evidence that Juror Gowdy suffered from any mental instability at the time Petitioner was tried and sentenced. Moreover, there is no evidence in the record before either this Court or the state habeas court to support the allegation that Juror Gowdy was incompetent at the time Petitioner was sentenced. As this court previously stated, further investigation on this claim will result only in an unwarranted fishing expedition. See Borden v. Allen, 646 F.3d 785, 810 n.31 (11th Cir. 2011) ("A habeas case is not a vehicle for a so-called fishing expedition via discovery, an effort to find evidence to support a claim."); see also Hittson v. GDCP

Warden, 759 F.3d 1210, 1271 (11th Cir. 2014) (quoting same). Because Petitioner has failed to present evidence which "if true, would entitle the applicant to federal habeas relief," he is not entitled to an evidentiary hearing. Schriro, 550 U.S. at 474.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion for an Evidentiary Hearing (Doc. 88) is **DENIED**. As a result, Respondent's Motion Requesting Ruling on Petitioner's Motion for Evidentiary Hearing (Doc. 93) is **DISMISSED AS MOOT**. Respondent's Motion for Leave to File Excess Pages (Doc. 106) is **GRANTED**.

SO ORDERED this 25th day of May 2017.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA